IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARANDA RIBOLI, personal representative of the estate of Brooklyn Marie Brehm, deceased,

    Plaintiff,

v.

REDMOND SCHOOL DISTRICT 2J, MICHAEL MCINTOSH, TRACIE RENWICK, and MADELINE TANNER,

    Defendants.

Case No. 6:19-cv-00593-MC

**OPINION & ORDER**

**MCSHANE, Judge**:

    Plaintiff Maranda Riboli is the mother of Brooklyn Brehm and the personal representative of her estate. Brooklyn died by suicide at the age of twelve on April 18, 2017. She was a sixth-grade student at Elton Gregory Middle School in Redmond, Oregon. Ms. Riboli brings this action against the Redmond School District, the district superintendent (Michael McIntosh), the Elton Gregory Middle School principal (Tracie Renwick), and one of Brooklyn's teachers (Madeline Tanner). Her complaint alleges a Title IX claim, an Equal Protection claim, a § 1983 failure to train claim, and a state-law wrongful death/negligence claim. At the heart of her claim is the assertion that Defendants failed to address reports of bullying and self-harm behavior that led to Brooklyn's suicide. Defendants move for summary judgment on all claims.

    Because Plaintiff fails to show gender-based discrimination and deliberate indifference, her federal claims fail. Due to the unique framework of Oregon negligence law and the dismissal

1 – OPINION AND ORDER

of all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining wrongful death/negligence claim.

## FACTUAL BACKGROUND

When Brooklyn started middle school at Elton Gregory in the fall of 2016, she was an average student and loved school. Hoyt Decl. Ex. 1, at 54, ECF No. 71. Around December of that year, Brooklyn told her mother, Ms. Riboli, about another student named S.L.[1] picking on her at school. *Id.* at 66–67. Ms. Riboli knew S.L.'s parents but declined to talk to them about S.L.'s behavior at Brooklyn's request. *Id.* at 70. On February 3, 2017, Ms. Tanner, Brooklyn's English teacher, emailed Ms. Riboli to voice some concerns about Brooklyn. Riboli Decl. Ex. 1, ECF No. 78. Ms. Tanner noticed a drop in Brooklyn's grades and a change in her classroom behavior. *Id.* Brooklyn "socialize[d] as much as possible" during class and was unengaged with class assignments. *Id.* Ms. Riboli replied via email that she too noticed a change in Brooklyn's attitude and that Brooklyn had mentioned she was having issues with a bully. *Id.*

Ms. Tanner and Ms. Riboli met in person shortly after their email exchange in February 2017. Hoyt Decl. Ex. 1, at 74–75. During their meeting, Ms. Riboli told Ms. Tanner of multiple comments S.L. made to Brooklyn, which included S.L. calling Brooklyn a "hungry hungry hippo" in the lunch room, S.L. saying "I bet you're excited because lunch is your favorite period" and "why don't you have another donut, it looks like you eat them all the time," and S.L. telling Brooklyn she would never get a boy she liked because she was fat. Brague Decl. Ex. 9, at 6, 9–10, ECF No. 82. Ms. Riboli told Ms. Tanner she didn't want Brooklyn around S.L. *Id.* at 10. Ms. Tanner stated she had not witnessed any such behavior herself but would keep an eye on the situation. Brague Decl. Ex. 10, at 19.

---

[1] Out of privacy for the minor S.L., his name has been abbreviated to his initials.

2 – OPINION AND ORDER

About a month later, in March 2017, Brooklyn spent a few days with her father, Jessie Brehm, during spring break. Hoyt Decl. Ex. 1, at 62–63. Before this visit, Brooklyn had limited contact with her father, as he was in and out of prison throughout Brooklyn's life. *Id.* at 33–35, 63. Ms. Riboli and Mr. Brehm are habitual methamphetamine users, and Ms. Riboli has obtained multiple restraining orders for domestic violence against Mr. Brehm and other romantic partners. *Id.* at 5–6, 7–9, 15–16, 28. The Court is not suggesting that Brooklyn was not deeply loved by her parents, but the record does amplify the fact that Brooklyn was witness to some trauma and chaos at home.

After spring break, Ms. Riboli still noticed a decline in Brooklyn's demeanor, so she and Mr. Brehm decided that Brooklyn would live with him in Sisters, Oregon where she would attend school. *Id.* at 79–80. Brooklyn was not happy about the move or the change in schools. *Id.* at 80. In early April, a friend of Brooklyn's reported to the school counselor, Ms. Platt, that she noticed cuts on Brooklyn's arms and a change in Brooklyn's emotions. Riddell Decl. 2, ECF No. 83. Ms. Platt had a phone conversation with Ms. Riboli shortly after and they set up an in-person meeting for mid-April. Suppl. Hoyt Decl. Ex. 14, at 2–3, ECF No. 97. Before the meeting could occur, Brooklyn hung herself in her home on April 18, 2017. *Id.* at 3; Brague Decl. Ex. 1, at 4. Brooklyn's suicide notes and journal refer to feelings of being unwanted, mean parents, bullies, boys she had a crush on, and S.L. telling her to go kill herself. *See* Brague Decl. Ex. 18.

At the time of Brooklyn's suicide, the Redmond School District had several policies in place on bullying and harassment and utilized a reporting system for such conduct. Hoyt Decl. Ex. 2, at 3–4; Hoyt Decl. Ex. 3. When bullying is reported to a teacher, the teacher has discretion in handling it based on the level of seriousness. Hoyt Decl. Ex. 2, at 6. The problem may be handled in the classroom, reported to the school counselor, or reported to the school principal for

investigation. *Id.* at 3. Additionally, each year teachers at the school undergo various trainings regarding adolescent suicide. Renwick Decl. Ex. 1, ECF No. 72. Between 2015 to 2017, Elton Gregory Middle School documented 75 instances in which the school disciplined students for bullying, harassment, fighting, and physical aggression. Brague Decl. Ex. 19.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Defendants move for summary judgment on Plaintiff's federal and state-law claims. The Court addresses each claim in turn.

### I. Title IX

Plaintiff argues that Redmond School District ("the District") was deliberately indifferent to known acts of sexual harassment against Brooklyn. The District counters that Plaintiff fails to show discrimination based on gender and deliberate indifference.

4 – OPINION AND ORDER

Title IX provides, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As a threshold matter, a plaintiff bringing a Title IX claim must show that the defendant is a recipient of federal funding and that the plaintiff experienced sex discrimination. *Karasek v. Regents of the Univ. of Cal.*, 948 F.3d 1150, 1162 n.1 (9th Cir. 2020). Sexual harassment is a form of sex discrimination for Title IX purposes. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999).

The plaintiff must then establish five elements: (1) the school exercised substantial control over both the harasser and the context in which the known harassment occurred; (2) the plaintiff suffered harassment that is "so severe, pervasive, and objectively offensive" that it deprived the plaintiff of access to the school's education opportunities or benefits; (3) a school official with authority to address and correct the discrimination had "actual knowledge" of the harassment; (4) the school acted with deliberate indifference to the harassment; and (5) the school's deliberate indifference subjected the plaintiff to harassment. *Karasek*, 948 F.3d at 1162.

To establish deliberate indifference, the plaintiff must show the school's response or lack thereof was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 649. Courts may, in an appropriate case, identify a response as not "clearly unreasonable" as a matter of law on a motion for summary judgment. *Id.* When evaluating Title IX claims for peer-on-peer harassment, courts must bear in mind that school children "regularly interact in a manner that would be unacceptable among adults." *Id.* at 651. "[S]tudents often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected

5 – OPINION AND ORDER

to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender." *Id.* at 651–52.

Plaintiff's Title IX claim fails on multiple grounds. At the outset, Plaintiff does not establish that Brooklyn was subjected to sexual harassment or gender-based discrimination. There is no clear definition of sexual harassment for Title IX purposes. The Ninth Circuit has previously used the Title VII "sexually hostile environment" standard, and the U.S. Supreme Court has referred to the EEOC definition of "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." *See Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1137 (9th Cir. 2006); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).

The harassment against Brooklyn that the District had knowledge of includes four insults made by Brooklyn's peer, S.L.[2] The Court is unconvinced that these remarks, all relating to Brooklyn's weight, were made on the basis of sex or gender. S.L.'s comments, though callous and hurtful, are not sexual in nature and could be directed at any child regardless of gender. As the Supreme Court in *Davis* explained, it is not enough to show a student has been teased or called offensive names. 526 U.S. at 652. For example, Title IX liability would not arise where "an overweight child skips gym class because the other children tease her about her size." *Id.* Plaintiff has therefore failed to make a threshold showing of sex discrimination required for a Title IX claim.

Even assuming sex discrimination is established, Plaintiff cannot show deliberate indifference by the District. Deliberate indifference is a "fairly high standard—a negligent, lazy,

---

[2] Plaintiff refers to an instance of S.L. telling Brooklyn to "go kill yourself" as additional evidence of harassment, but nothing in the record indicates anyone at the school had knowledge of this statement. Further, this statement is not gender-based such that it would constitute sexual harassment.

6 – OPINION AND ORDER

or careless response will not suffice." *Karasek*, 956 F.3d at 1105. The plaintiff must demonstrate that the school's actions amounted to "an official decision . . . not to remedy the violation." *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006). "School administrators are given substantial deference when determining a disciplinary response for student-on-student harassment." *M.M. v. San Juan Unified Sch. Dist.*, No. 19-cv-003982020, U.S. Dist. LEXIS 175940, at *22 (E.D. Cal. Sept. 23, 2020). Generally, a school's violation of its own policies does not establish deliberate indifference. *Karasek*, 948 F.3d at 1107.

  Plaintiff argues that the District's failure to take action with respect to the bullying against Brooklyn and other reports of bullying, harassment, and assaults at the school constitutes deliberate indifference. Regarding the bullying against Brooklyn, the sole person aware of it at the school was Ms. Tanner after her meeting with Ms. Riboli. Ms. Tanner stated that she had not observed any bullying behavior involving S.L. and Brooklyn but would keep her eye on the situation. Brague Decl. Ex. 10, at 19. This is not a clearly unreasonable response in light of the known circumstances. Ms. Tanner had not witnessed any bullying against Brooklyn, and Ms. Riboli did not indicate to Ms. Tanner that this was a serious problem. Brooklyn never reported bullying to anyone at the school, nor was anyone at the school aware that Brooklyn was suicidal. School officials retain discretion in responding to disciplinary situations, and Ms. Tanner's response to monitor the situation was reasonable in light of what very little she knew. *See San Juan Unified Sch. Dist.*, 2020 U.S. Dist. LEXIS 175940, at *22.

  At worst, Ms. Tanner's failure to report S.L.'s comments to the school counselor or principal may have been lazy, but one instance of laziness by a single teacher does not amount to deliberate indifference. *See Oden*, 440 F.3d at 1089. Further, such an assessment of laziness is hard to make when it was Ms. Tanner who reached out to Ms. Riboli to discuss the change in

7 – OPINION AND ORDER

Brooklyn's classroom behavior. There is nothing to suggest that Ms. Tanner was not capable of following through with her promise to monitor the situation.

Regarding the District's alleged lack of response to instances of harassment, bullying, and assault overall, there is no evidence that the District failed to respond to such instances. Plaintiff proffers evidence of police responses to the school from 2016 to 2017 for instances of harassment, assault, and suicidal students, then simply states that the District failed to respond to known instances of harassment. Pl.'s Resp. Defs.' Mot. Summ. J. 32, ECF No. 77; Brague Decl. Ex. 8. Yet a log of Elton Gregory Middle School disciplinary actions from the 2015 to 2017 school years shows the school's responses to reports of student misbehavior, demonstrating that the school did appropriately respond to known instances of harassment. *See* Brague Decl. Ex. 19.

Because Plaintiff failed to establish sex discrimination and deliberate indifference, Defendants' Motion for Summary Judgment on the Title IX claim is GRANTED.

## II. Section 1983 Equal Protection

Plaintiff argues that individual Defendants McIntosh (district superintendent), Renwick (school principal), and Tanner (teacher) discriminated against Brooklyn based on her gender by failing to address the bullying against her. Defendants respond that, similar to her Title IX claim, Plaintiff cannot show sex discrimination or deliberate indifference.

42 U.S.C. § 1983 provides a remedy to individuals whose federal constitutional rights have been violated under the color of state law. *Burke v. Cnty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). "To establish a § 1983 equal protection violation, the plaintiff[] must show that the defendants, acting under color of state law, discriminated against [her] as [a] member[] of an identifiable class and that the discrimination was intentional" or resulted from deliberate indifference. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134–35 (9th Cir. 2003).

Discriminatory intent "implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979). Deliberate indifference may be found if a school official or administrator responds to known discrimination or peer harassment in a manner that is clearly unreasonable. *Flores*, 324 F.3d at 1135.

Plaintiff relies on *Flores* to support her assertion that "taking no action to reports of bullying and harassment is clearly unreasonable." Pl.'s Resp. 36. In *Flores*, a group of students established a § 1983 Equal Protection claim after being subjected to anti-homosexual harassment by their peers, including name calling, unwanted pornographic messages, and physical abuse. 324 F.3d at 1132–33. The Ninth Circuit found sufficient evidence for a jury to conclude that the defendants treated the students differently based on sexual orientation and acted with deliberate indifference after years of failing to address the students' reports of bullying. *Id.* at 1135.

Plaintiff's Equal Protection claim meets the same ill fate as her Title IX claim. First, there is no evidence that any of the individual Defendants discriminated against Brooklyn based on her sex or gender. As explained above, the four comments related to Brooklyn's weight do not constitute sexual harassment. Second, Plaintiff fails to demonstrate that Brooklyn was treated differently from other students based on her gender. Plaintiff claims that the school took complaints of male-on-male bullying more seriously than complaints of male-on-female bullying. Pl.'s Resp. 37. But the school's disciplinary logs show that, in general, male-on-male harassment occurs much more frequently than male-on-female or female-on-female harassment. *See* Reply in Supp. of Defs.' Mot. Summ. J. 4–5, ECF No. 87; Brague Decl. Ex. 19.

Finally, Plaintiff fails to show that Defendants' response to known peer harassment was clearly unreasonable such that it constituted deliberate indifference. Based on the record,

McIntosh and Renwick had no individual knowledge of the bullying against Brooklyn. Ms. Tanner, Brooklyn's teacher, received secondhand information from Brooklyn's mother about four insults made to Brooklyn by her peer, behavior which Ms. Tanner never personally witnessed. Comparing these facts with those of *Flores*, where the students were taunted repeatedly for years, physically abused by their peers, and made several official reports to school administrators that went unanswered, Ms. Tanner's promise to watch the situation after one informal conversation with Brooklyn's mother hardly amounts to deliberate indifference.

Because Plaintiff fails to show sex discrimination and deliberate indifference, Defendants' Motion for Summary Judgment on the § 1983 Equal Protection claim is GRANTED.

### III. Section 1983 Failure to Train and Supervise

Plaintiff brings a failure to train and supervise claim against the District, arguing its lack of training for reports of harassment, bullying, and suicidal ideation caused a constitutional deprivation to Brooklyn leading to her death.

A municipality may be liable under § 1983 when the execution of the municipality's policy or custom inflicts a constitutional deprivation or injury. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A policy can be one of action or inaction. *Id.* To impose liability against a municipality for its failure to act, a plaintiff must show: "(1) a county employee violated the plaintiff's constitutional rights; (2) the county has customs or policies that amount to deliberate indifference; and (3) these customs or policies were the moving force behind the employee's violation of constitutional rights." *Id.* at 1186.

Similar to Title IX and § 1983 Equal Protection claims, deliberate indifference is "a stringent standard of fault." *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

A plaintiff must demonstrate a direct link between the municipality's policy and the alleged constitutional violation. *Mackinney v. Nielsen*, 69 F.3d 1002, 1010 (9th Cir. 1995) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). A plaintiff can show a direct link by proving the policy itself is unconstitutional or that the municipality made a deliberate choice to fail to train its employees adequately. *Id.* Where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, [] the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiff claims the District's training for investigating reports of harassment, bullying, or suicide was inadequate. Plaintiff bases her argument on Ms. Tanner's lack of response and failure to report the bullying against Brooklyn, as well as the school's general lack of response to reported instances of harassment, bullying, assault, and suicidal students. Pl.'s Resp. 39.

Plaintiff offers no evidence that the District lacked policies in regard to bullying, harassment, and suicide. In fact, there is ample evidence that the District had a reporting system in place and trained teachers and staff about bullying. *See* Hoyt Decl. Ex. 2, at 3–4; Hoyt Decl. Ex. 3. The District's reporting system operated on levels, where complaints of bullying or harassment could be handled at the classroom level by a teacher, reported to the school counselor, or reported to the school principal for official investigation. Hoyt Decl. Ex. 2, at 3–4. Teachers and staff retain discretion in how to handle bullying or harassment situations that come to their attention based on the situation's severity and other known information. *Id.* Additionally,

11 – OPINION AND ORDER

each year teachers at the school underwent various trainings regarding youth mental health and suicide. Renwick Decl. Ex. 1.

Plaintiff again relies on a list of police responses to the school for instances of bullying, harassment, assault, and suicidal students to demonstrate the District's deliberate indifference. Pl.'s Resp. 39; Brague Decl. Ex. 8. But a list of police responses to the school fails to show how the District made a deliberate choice not to train its own employees. As mentioned above, the log of Elton Gregory Middle School's disciplinary actions from the 2015 to 2017 school years for acts of bullying and harassment shows that the school did respond to known instances of student misconduct. *See* Brague Decl. Ex. 19; Renwick Decl. Ex. 2. The evidence overall seems to suggest the opposite of what Plaintiff argues: the District did have a reporting system and training in place for complaints of bullying and harassment, and it did adequately respond to disciplinary matters involving such conduct. Plaintiff argues Ms. Tanner's lack of response demonstrates the District's failure to train, but one employee's arguably lazy response does not impose liability on a municipality for failure to train. *See Connick*, 563 U.S. at 62.

Because Plaintiff fails to show a direct link between the District's policies and Brooklyn's death demonstrating the District's deliberate indifference, Defendants' Motion for Summary Judgment on the § 1983 failure to train and supervise claim is GRANTED.

**IV. Negligence – Supplemental Jurisdiction**

A district court may decline to exercise supplemental jurisdiction over a state-law claim where "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," or the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1)–(3). After dismissing all federal claims, the court's decision whether to exercise

12 – OPINION AND ORDER

supplemental jurisdiction over a remaining state-law claim is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). The court's decision is informed by values of "economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Acri*, 114 F.3d at 1001. However, dismissing a state-law claim may be an abuse of discretion when the claim has proceeded in federal court for several years and the parties are "essentially done with trial preparation." *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (holding that the district court's dismissal of the state-law claim seven days before trial was an abuse of discretion because it was unfair to the parties and an inefficient use of judicial resources).

After careful consideration, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law negligence claim. All of Plaintiff's federal claims are dismissed, triggering the Court's discretion under 28 U.S.C. § 1367(c)(3). Further, the unique framework of Oregon negligence law makes this case better suited for state court, particularly where Oregon courts have yet to assess how suicide fits into the convoluted foreseeability analysis. *See id.* § 1367(c)(1). Inconvenience to the parties is minimal, as the case is at the summary judgment stage, no trial date has been set, and Plaintiff may refile her state-law claim in state court. *See id.* § 1367(d); *Lima v. U.S. Dep't of Educ.*, 944 F.3d 1172, 1178 (9th Cir. 2019) (finding no abuse of discretion where district court declined to exercise supplemental jurisdiction after granting summary judgment on all federal claims); *see also San Pedro Hotel Co. v. City of Los Angeles*,

159 F.3d 470, 478–79 (9th Cir. 1998) (explaining that no additional justification is required when the district court declines to exercise supplemental jurisdiction under one of the first three provisions of 28 U.S.C. § 1367(c)). The balance of factors therefore weighs in favor of declining to exercise supplemental jurisdiction in this case.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment, ECF No. 70, is GRANTED as to Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law wrongful death/negligence claim.

IT IS SO ORDERED.

DATED this 2nd day of February, 2022.

_____s/Michael J. McShane_____
**Michael J. McShane**
**United States District Judge**